IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:12-CV-00023-F

| | | |
|---|---|---|
| PHILLIP J. SINGER, Individually and on Behalf of All Other Persons Similarly Situated, | )<br>)<br>)<br>) | |
| Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | **ORDER** |
| TRANS1, INC., KENNETH REALI, JOSEPH P. SLATTERY, RICHARD RANDALL, and MICHAEL LUETKEMEYER, | )<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

This matter is before the court on the defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [DE-63] pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). The matter has been fully briefed and is ripe for ruling. For the reasons stated herein, the motion is ALLOWED.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Joel Caplin initiated this action on January 24, 2012, by filing a Class Action Complaint [DE-1] alleging claims for violations of the federal securities laws. On April 2, 2012, Phillip J. Singer moved for appointment as lead plaintiff [DE-21], which the court allowed on May 8, 2012 [DE-27]. On July 11, 2012, Singer filed an Amended Class Action Complaint [DE-29]. The defendants moved to dismiss. *See* Mot. Dismiss Pl.'s Am. Class Action Compl. [DE-34].

In its Order of September 19, 2013 [DE-48], the court dismissed Singer's Amended Class Action Complaint with prejudice. However, the court later allowed Singer's Motion to Alter or Amend the Order and Judgment of Dismissal with Prejudice [DE-50]. *See* Order of May 5, 2014 [DE-54]. Singer then filed a Second Amended Class Action Complaint ("SAC") [DE-55], which the defendants soon moved to dismiss. *See* Mot. Dismiss Pl.'s SAC [DE-63]. While the court considered the motion to dismiss, the action was automatically stayed as to Defendant Trans1 due to bankruptcy proceedings. *See* Notice Bankr. Filing & Automatic Stay [DE-68]. Though the case was stayed as to Trans1, the court allowed the motion to dismiss as to the individual defendants. *See* Order of May 14, 2015 [DE-72]. On August 13, 2015, the defendants provided notice of the lifting of the automatic bankruptcy stay. *See* Notice [DE-83]. The court now turns to the motion to dismiss as it pertains to Trans1.

The court has previously reviewed the allegations of the SAC in great detail. *See* Order of May 14, 2015 [DE-72]. The court presumes familiarity with those allegations and does not repeat them here. For purposes of this motion, the court must accept those allegations as true.

## II. LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'"

*Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (second alteration in original) (citations omitted). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts.*, 213 F.3d at 180. The court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" when deciding a Rule 12(b)(6) motion. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### III. DISCUSSION

#### A. In order to state a claim against Trans1, the SAC must allege, *inter alia*, a material misrepresentation or omission and scienter.

In order to state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008). Moreover, a plaintiff must plead with particularity the circumstance constituting fraud. *See* Fed. R. Civ. P. 9(b). This particularity requires that a plaintiff, "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotation marks omitted). In other words, the plaintiff must state the "who, what, when, where, and how of the alleged fraud." *Id.* (internal quotation marks omitted).

3

Under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 *et seq.*, a complaint alleging securities fraud must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). This strong inference does not merely require an inference from which "a reasonable person could infer that the defendant acted with the required intent," but instead requires a "powerful or cogent" inference. *Tellabs*, 551 U.S. at 323. Furthermore, "when the facts as a whole more plausibly suggest that the defendant acted innocently—or even negligently—rather than with intent or severe recklessness, the action must be dismissed." *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 624 (4th Cir. 2008).

Further rules apply where a complaint alleges fraud by omission. For an omission to be actionable under securities law, it must "create an impression of a state of affairs that differs in a material way from the one that actually exists." *Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 584 (E.D. Va. 2006) (citing *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 613 (4th Cir. 1999)). "[I]t bears emphasis that § 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1321 (2011). Instead, "[d]isclosure is required under these provisions only when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'" *Id.* (quoting 17 C.F.R. § 240.10b-5(b)). "Even with respect to information that a reasonable investor might consider material, companies can control what they have to disclose under these provisions by controlling what they say to the market." *Id.* at 1322. That said, if a company "puts the topic of the cause of its financial success at issue, then it is 'obligated to disclose information concerning the source of its success, since reasonable investors would find that such information would significantly alter the mix of

4

available information.'" *In re Van der Moolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388, 400-01 (S.D.N.Y. 2005) (citing *In re Providian Fin. Corp. Sec. Litig.*, 152 F. Supp. 2d 814, 824-25 (E.D. Pa. 2001)).

### B. Corporate liability derives from the actions of the corporation's agents.

Corporations may be liable for violations of the aforementioned laws, but "corporate liability derives from the actions of its agents." *Teachers' Ret. Sys. v. Hunter*, 477 F.3d 162, 184 (4th Cir. 2007). "To the extent a plaintiff alleges corporate fraud, the plaintiff 'must allege facts that support a strong inference of scienter with respect to at least one authorized agent of the corporation.'" *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 182 (4th Cir. 2009) (quoting *Hunter*, 477 F.3d at 184)).

Here, the court has already considered and rejected the plaintiff's arguments as to the individual defendants. *See* Order of May 14, 2015 [DE-72]. In the order dismissing the individual defendants, the court found both (1) that the SAC failed to allege a material misrepresentation or omission by the individual defendants, and (2) that the SAC failed to allege a strong inference of scienter. *See generally id.* Therefore, the only way for the SAC to establish liability as to Trans1, the corporate defendant, is (1) to identify some other corporate agent who made a material misrepresentation or omission, and (2) to make allegations manifesting a strong inference of scienter as to at least one authorized agent, even though the allegations failed to establish individual scienter. *See Matrix Capital*, 576 F.3d at 182, 190.

### C. The SAC does not allege that any of Trans1's authorized agents made a material misrepresentation or omission, nor does it allege scienter.

The plaintiff argues that the SAC sufficiently identifies Amy Conners and Dr. Tobler as "authorized agents who were either directly involved in or had knowledge of the fraudulent coding scheme." *See* Pl.'s Suppl. Br. Opp. Defs.' Mot. Dismiss [DE-90] at 7. Moreover, the

5

plaintiff argues that the question of whether Conners and Tobler were authorized agents is an issue of fact not appropriate for resolution on a motion to dismiss. *Id.* at 7-8. Regardless of the latter question, the SAC does not sufficiently allege that Conners or Tobler prepared or made any fraudulent statements independent of those statements the court has already found not to be material misrepresentations or omissions. The plaintiff's arguments to the contrary merely retread ground that the court previously covered in its order dismissing the individual defendants.[1] Simply put, the SAC does not sufficiently allege that any authorized corporate agent made a material misrepresentation or omission.

The SAC additionally does not allege scienter as to Conners or Tobler or any other authorized agent. The plaintiff argues that Conners's presentations to Defendant Trans1's Board of Directors provides a basis for corporate scienter. As the court stated in its order dismissing the individual defendants, the plaintiff misses the mark: the question is not whether the corporation knew the full extent of its reimbursement practices, but whether it knew that its public disclosures and statements were misleading. The allegations concerning the content of Conners's

---

[1] For example, to the extent that the plaintiff argues that Trans1's public filings intentionally misled investors, the court has already addressed such arguments. *See* Order of May 14, 2015 [DE-72] at 13-14. There is no allegation showing that the corporation, or any of its directors, knew that the reimbursement practices were illegal. If there is no allegation that the corporation knew its practices were illegal, then the SAC cannot show that the corporation failed to disclose the illegality of its reimbursement practices. As stated in the court's Order of May 14, 2015,

> The plaintiff argues . . . that it was inappropriate for the defendants to advise surgeons to use multiple codes when billing a procedure. The SAC, however, does not allege that such a practice was improper. Indeed, even the settlement agreement between TranS1 and the government does not indicate that using multiple codes, in and of itself, is inappropriate. Moreover, the SAC does not allege that the defendants knew that using multiple codes was inappropriate. Even if billing with multiple codes was inappropriate, the SAC shows that the defendants fully disclosed that TranS1 encouraged billing for AxiaLIF with multiple CPT codes.

*See id.* at 18 (internal citations omitted). While this is only one example of an argument raised by the plaintiff for a second time, the court has reviewed the plaintiff's memorandum opposing dismissal of Trans1 and cannot find an argument not already addressed in the court's previous order dismissing the individual defendants.

6

presentations to the board state only that she "made a number of presentations to management and the Board of Directors regarding reimbursement issues in light of the AMA's Category III designation." *See* SAC [DE-55] ¶ 113; *see also id.* ¶ 51. The allegations say nothing else about the content of those presentations.[2] Those allegations are wholly insufficient to establish corporate scienter. If Conners's actions were to somehow provide a basis for corporate scienter, then those actions would already have provided a basis for scienter on the part of the individual defendants. The court rejected such arguments when dismissing the individual defendants and it rejects those arguments again now.

The plaintiff additionally argues that the magnitude of the settlement for the *qui tam* lawsuit and the DHHS investigation shows the magnitude of the fraud. However, the settlement speaks only to the magnitude of the settlement, not to the magnitude of the alleged fraud. Furthermore, as part of the settlement agreement, TranS1 expressly denied the allegations of the *qui tam* complaint and did not admit liability. *See* Settlement Agreement [DE-46-1] at 3, ¶ E. The settlement does not provide a basis for finding a corporate scienter, nor does the SAC allege corporate scienter.

The SAC does not allege that Trans1's authorized agents made a material misrepresentation or omission. Neither does the SAC allege corporate scienter. The defendants' Motion to Dismiss Plaintiff's SAC [DE-63] is ALLOWED as to Trans1.

## IV. CONCLUSION

The defendants' Motion to Dismiss Plaintiff's SAC [DE-63] is ALLOWED as to Trans1. The plaintiff's claims against Trans1 are hereby DISMISSED WITH PREJUDICE. The Clerk of Court is DIRECTED to close this case.

---

[2] The court previously noted this lack of content. *See* Order of May 14, 2015 [DE-72] at 17 n.12.

7

SO ORDERED.

This, the 7 day of December, 2015.

                                                *James C. Fox*
                                                JAMES C. FOX
                                                Senior United States District Judge