IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:12-CV-23-D

| | |
|---|---|
| PHILLIP J. SINGER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| TRANS1, INC., et al. ) | |
| ) | |
| Defendants. ) | |

On May 18, 2018, plaintiffs and Baxano Surgical, Inc. f/k/a TranS1, Inc. ("TranS1"), Kenneth Reali, Joseph P. Slattery, Richard Randall, and Michael Luetkemeyer (collectively "defendants") entered into a settlement agreement to settle the above-captioned class action litigation, subject to this court's preliminary and final approval. See Fed. R. Civ. P. 23. On July 2, 2018, the court granted preliminary approval [D.E. 118]. The court described the factual and legal background of the case. As summarized in that order, on January 24, 2012, plaintiffs, on behalf of themselves and others similarly situated, filed a complaint against defendants for securities fraud in violation of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and 17 C.F.R. § 240.10b-5 ("Rule 10b-5") [D.E. 1]. On May 22, 2018, plaintiffs moved for preliminary approval of a proposed class action settlement [D.E. 113] and filed a memorandum in support [D.E. 114]. On July 2, 2018, the court granted that motion [D.E. 118].

Since that date, the parties have worked with the designated settlement administrator, Epiq Class Action & Claims Solutions, Inc., in order to notify potential settlement class members through the methods approved by this court. These methods include first class mail to every settlement class

member who can be identified through reasonable effort, a posting on a website dedicated to this litigation, and a posting on *Business Wire*, a leading publication in press release distribution and regulatory disclosure. See [D.E. 118] 16; [D.E. 122] 9. On October 29, 2018, plaintiffs moved for final approval of the class action settlement [D.E. 121].

On November 19, 2018, this court held a final fairness hearing to consider matters relating to the settlement, including (1) whether the settlement classes should be certified for settlement purposes only; (2) the fairness, reasonableness, and adequacy of the settlement, the terms of the settlement agreement, the dismissal with prejudice of the litigation as to defendants, and the entry of final judgment; and (3) whether class counsel's application for attorney's fees, expenses, and service awards for the settlement class representatives, and their other costs, should be granted. See [D.E. 118] 21. This court has carefully considered all arguments made by counsel and has thoroughly reviewed the record. As explained below, the court finds that the proposed class action settlement is fair, reasonable, and adequate to all class members, and grants the motion for final approval of the class action settlement.

I.

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Rule 23(e)'s primary concern is "the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." In re Jiffy Lube Secs. Litig., 927 F.2d 155, 158 (4th Cir. 1991). Courts generally follow a two-step procedure in reviewing a proposed settlement. Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 855 F. Supp. 825, 827 (E.D.N.C. 1994); Beaulieu v. EQ Indus. Servs., Inc., No. 5:06-CV-400-

BR, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009) (unpublished). First, the court reviews the settlement to determine whether there is "probable cause to notify the class of the proposed settlement." Horton, 855 F. Supp. at 827 (quotation omitted); accord Speaks v. U.S. Tobacco Coop., Inc., 324 F.R.D. 112, 142 (E.D.N.C. 2018); In re Outer Banks Power Outage Litig., No. 4:17-CV-141, 2018 WL 2050141, at *2 (E.D.N.C. May 2, 2018) (unpublished). Second, after notice has been sent to putative class members, the court conducts a final fairness hearing at which "all interested parties are afforded an opportunity to be heard on the proposed settlement." Horton, 855 F. Supp. at 827.

In analyzing the motion for final approval of the class action settlement, the court first must determine whether to finally certify the class for settlement. See Speaks, 324 F.R.D. at 133–36. The requirements for certification of a settlement class parallel the requirements for certification of a litigation class. See id. at 135 (collecting cases). The putative class must meet the four Rule 23(a) prerequisites and fit within one of the three Rule 23(b) categories. See id.; Fed. R. Civ. P. 23(a).

On July 2, 2018, this court certified the class for purposes of preliminary approval pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3). See [D.E. 118] 8–11. The court now finds that certification is appropriate for purposes of the final approval of the settlement. As noted, the settlement class includes "all Persons who purchased or acquired TranS1 securities (including through the exercise of warrants or options) during the Class Period who were allegedly damaged thereby." [D.E. 115-1] ¶ 1.28. The class period is the period between February 23, 2009, and October 17, 2011. See id. ¶ 1.5. Excluded from the settlement class are the defendants, the officers and directors of TranS1 during the class period, members of the immediate families of the individual defendants and the officers and directors of TranS1 during the class period, any entity in which any

defendant had a controlling interest during the class period, and the successors, heirs, and assigns of any such excluded person. See id. ¶ 1.28. Persons who "timely and validly seek exclusion from the settlement class" are also excluded from the settlement class. Id.

The court finds, for the purpose of final approval of the settlement, and consistent with its preliminary approval order, that the requirements of Rule 23(a) are met: (a) the numerous class members would make joinder impractical; (b) there are questions of law and fact common to the members of the class; (c) the claims of the class representatives are typical of the claims of the members of the class; and (d) the class representatives and counsel will fairly and adequately protect the interests of the class. See Fed. R. Civ. P. 23(a); [D.E. 118] 9–11.

The court finds that questions of law and fact common to the class members predominate over any questions affecting individual class members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. See Fed. R. Civ. P. 23(b)(3); [D.E. 118] 11–14. The court confirms for purposes of final approval that the plaintiff named in its preliminary approval order as class representative for settlement purposes only is lead plaintiff Phillip J. Singer.

Pursuant to Rule 23(c)(2)(B) and (e)(1), the court finds that the plan for the distributing notice to the class of the settlement constitutes the best notice practicable under the circumstances and is reasonably calculated to apprise class members of the pendency of the litigation, the terms of the agreement, their right to exclude themselves from the class or to object to any part of the settlement, and the binding effect of a judgment on class members who do not exclude themselves. The court finds based on the submissions made in connection with the final approval hearing that the notice plan has been properly performed and complies with the notice requirements of Rule

23(c)(2)(B) and due process.

To approve a proposed settlement, the court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); see Speaks, 324 F.R.D. at 142 (collecting cases). "The fairness analysis is intended primarily to ensure that a settlement is reached as a result of good-faith bargaining at arm's length, without collusion." Berry v. Schulman, 807 F.3d 600, 614 (4th Cir. 2015) (quotation and alteration omitted). In assessing the fairness of the proposed settlement, courts consider the following factors: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of class action litigation." Speaks, 324 F.R.D. at 150 (alteration omitted); Jiffy Lube, 927 F.2d at 159.

The court finds that the case posture was appropriate in that the plaintiffs coordinated their claims and pleadings and the parties engaged in good-faith, arm's length negotiation. The record is sufficiently developed to enable the parties to evaluate their positions adequately, especially because this litigation began in 2012. Counsel for all parties are reputable and experienced, and they believe that the settlement is fair to all parties after extensive investigation and litigation. Moreover, the parties participated in extensive settlement negotiations, including mediation. See [D.E. 122] 14. Finally, there is no evidence of collusion. Accordingly, the court finds that the settlement is fair.

"In assessing the adequacy of the proposed settlement courts consider the following factors: (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement."

5

Speaks, 324 F.R.D. at 142 (quotation omitted).

As discussed in the court's order preliminarily approving the settlement [D.E. 118], plaintiffs coordinated to file the strongest possible claim against TranS1. The settlement agreement resulted from extensive negotiation at arm's length between experienced counsel representing the interests of the parties. Since TranS1 dissolved on August 10, 2015, plaintiffs might not be able to recover the full value of any judgment if plaintiffs litigated to final judgment successfully. Plaintiffs also would need to overcome numerous defenses, face substantial time and expense in conducting discovery, and resolve any dispositive motions. Finally, no class members oppose the settlement. Accordingly, the court finds that the settlement is adequate.

"In conducting its fairness analysis, a court need not reach any dispositive conclusions concerning the merits of the case." Speaks, 324 F.R.D. at 143 (quotation omitted). The court's review of the facts and law demonstrates that the parties hotly contested certain key issues, including causation, falsity, and scienter. See [D.E. 122] 10. The litigation even resulted in an appeal to the United States Court of Appeals for the Fourth Circuit. See id. Given the uncertainty surrounding numerous legal issues, as well as the complications arising from the dissolution of TranS1, the court finds that the settlement provides significant compensation to the class.

Under the claims program established by the Stipulation and Agreement of Settlement ("stipulation"), the settlement class will receive cash payments in exchange for release of the disputed claims. See [D.E. 115-1] ¶¶ 5.0–5.2. The defendants or defendants's insurance carrier will pay $3,250,000.00 into the settlement fund (less any attorneys' fees, costs, and incentive awards, and less any sums already advanced after the court's preliminary approval of settlement). Up to $250,000 of the settlement fund will go towards notice and administrative costs, and any further

costs will require a court order. See [D.E. 118] 5. Class counsel will request an award of attorneys' fees not to exceed $975,000—30% of the settlement amount—and up to $75,000 in out-of-pocket litigation expenses, as well as $3,000 to compensate the lead plaintiff for his reasonable costs and expenses. See [D.E. 115-1] ¶¶ 7.0–7.4; [D.E. 115-3] 3; [D.E. 118] 5.

The settlement fund will be administered: (1) to pay tax expenses; (2) to pay notice and administration costs; (3) to pay the fee and expense awards to lead counsel to the extent approved by the court; (4) to reimburse the plaintiff for cost and expenses to the extent allowed by the court; and (5) to pay claimants in accordance with the stipulation, plan of allocation, or court order. See [D.E. 115-1] ¶ 6.2; [D.E. 118] 5. All funds that the escrow agent holds shall be deemed and considered to be in custodia legis and shall remain subject to the court's jurisdiction until such time as such funds shall be distributed pursuant to the stipulation or further order(s) of the court. See [D.E. 118] 5.

Finally, the class members have reacted favorably to the settlement. Moreover, the court has not received any objections to the settlement. See [D.E. 127] 1.

II.

Upon the Effective Date, lead Plaintiff and each Settlement Class Member (whether or not they submit a Proof of Claim or share in the Settlement Fund), and the heirs, representatives, attorneys, affiliates, executors, trustees, administrators, predecessors, successors, and assigns of each of them, in their capacity as such, shall be deemed to have, and by operation of the court's final judgment shall have, fully, finally, and forever waived, released, relinquished, discharged, and dismissed each and every one of the Settlement Class Claims against each and every one of the Released Defendant Parties, and shall forever be barred and enjoined from the assertion, institution,

7

maintenance, prosecution, or enforcement in any state or federal court or arbitral forum, or in the court of any foreign jurisdiction, administrative forum, or other forum of any kind, of any and all of the Settlement Class Claims against any and all of the Released Defendant Parties.

Upon the Effective Date, the Defendants, and the heirs, representatives, attorneys, affiliates, executors, trustees, administrators, predecessors, successors, and assigns of each of them, in their capacity as such, shall be deemed to have, and by operation of the court's judgment shall have, fully, finally, and forever waived, released, relinquished, discharged, and dismissed each and every one of the Released Defendants's Claims against each and every one of the Released Plaintiff Parties and shall forever be barred and enjoined from the assertion, institution, maintenance, prosecution, or enforcement in any state or federal court or arbitral forum, or in the court of any foreign jurisdiction, administrative forum or other forum of any kind, of any and all of the Released Defendants' Claims against any and all of the Released Plaintiff Parties.

All persons are barred from commencing, prosecuting, or asserting any barred claims (as defined below). All barred claims are hereby extinguished, discharged, satisfied, and unenforceable. If any term of this bar order is held to be unenforceable after the date of entry, such provision shall be substituted with such other provision as may be necessary to afford all Released Parties the fullest protection permitted by law from any barred claim. For purposes of this order and the court's final judgment, "barred claim" means any claim, if any, however styled, whether for indemnification, contribution, or otherwise, and whether arising under state, federal, or common law, against the Defendants or Released Parties (including claims asserted by Released Parties against other Released Parties) where the claim is or arises from a settled claim and the alleged injury to such person arises from that person's alleged liability to the Settlement Class or any Settlement Class Member,

including any claim in which a person seeks to recover from any of the Released Parties (i) any amounts such person has or might become liable to pay to the Settlement Class or any Settlement Class Member and/or (ii) any costs, expenses, or attorneys' fees from defending any claim by the Settlement Class or any Settlement Class Member.

Notwithstanding the foregoing paragraph, nothing in this order and the court's final judgment: (1) will bar or constitute a release of any claim by any of the Released Parties for insurance or reinsurance coverage arising out of, related to, or in connection with this action or the Settled Claims; or (2) shall prevent any person listed on Exhibit A hereto from pursuing any claim against any Released Party; if any such person pursues any such claim against any Released Party, nothing in this order and the court's final judgment, or in the stipulation, shall operate to preclude such Released Party from (i) asserting any claim of any kind against such person, including any settled claim (ii) or seeking contribution or indemnity from any person, including any other Released Party, in respect of the claim made by a person listed on Exhibit A.

Lead counsel is awarded attorneys' fees in the amount of $975,000, and out-of-pocket litigation expenses in the amount of $49,242.65, plus any applicable interest. Such amounts shall be paid from the Settlement Fund within ten business days following the entry of this order. Lead counsel shall thereafter be solely responsible for allocating the attorneys' fees and expenses among other plaintiffs' counsel in a manner that lead counsel, in good faith, believes reflects the contributions of such counsel to the initiation, prosecution, and resolution of the action. In the event that the court's judgment does not become final, and any portion of the Fee and Expense Award has already been paid from the Settlement Fund, lead counsel, and all other plaintiffs' counsel to whom lead counsel has distributed payments, shall refund the Fee and Expense Award to the Settlement

Fund pursuant to the stipulation within ten business days of entry of the order rendering the settlement and judgment non-final, giving notice of the settlement being terminated, or precluding the Effective Date from occurring.

Lead plaintiff is awarded the sum of $3,000 as reasonable costs and expenses directly relating to the representation of the Settlement Class as provided in 15 U.S.C. § 78u-4(a)(4), such amounts to be paid from the Settlement Fund upon the Effective Date of the settlement.

The Court hereby finds that the proposed Plan of Allocation is a fair and reasonable method to allocate the Net Settlement Fund among the Settlement Class Members.

Neither this order and the court's final judgment, the Preliminary Approval Order, the stipulation (including the exhibits thereto), the Memorandum Of Understanding ("MOU"), nor any of the negotiations, documents or proceedings connected with them shall be deemed to be, or be, argued to be offered or received: (1) against any of the Defendants as evidence of, or construed as evidence of any presumption, concession, or admission by any of the Defendants with respect to the truth of any fact alleged by the Plaintiff in this action or the validity of any claim that has been or could have been asserted against any of the Defendants in this action, or the deficiency of any defense that has been or could have been asserted in the action, or of any wrongdoing or liability by any of the Defendants; (2) against any of the Defendants as evidence of, or construed as evidence of any presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by any of the Defendants, or against the Plaintiff or any Settlement Class Member or lead counsel as evidence of, or construed as evidence of, any infirmity of the claims alleged by the Plaintiff in the action, or of any bad faith, dilatory motive, or inadequate prosecution of the claims or the action; (3) against any of the

Defendants, the Plaintiff, or any Settlement Class Member as evidence of, or construed as evidence of, any presumption, concession, or admission by any of the Defendants, the Plaintiff, or any Settlement Class Member with respect to any liability, negligence, fault, or wrongdoing as against any of the Defendants, the Plaintiff, or any Settlement Class Member in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation, provided that if this stipulation is approved by the court, the Defendants, the Plaintiff, and any Settlement Class Member may refer to it to effectuate the liability protection granted to them in the stipulation; (4) against any of the Defendants as evidence of, or construed as evidence of, any presumption, concession, or admission by any of them that the Settlement Amount represents the amount which could or would have been received after trial of the action against them; (5) against the Plaintiff or any Settlement Class Member as evidence of, or construed as evidence of, any presumption, concession, or admission by any of the Plaintiff or any Settlement Class Member that any of their claims are without merit, or that any defenses asserted by the Defendants in the action have any merit, or that damages recoverable in the action would not have exceeded the Settlement Fund; or (6) as evidence of, or construed as evidence of, any presumption, concession, or admission that class certification is appropriate in this action, except for purposes of settlement only.

Notwithstanding the foregoing paragraph, the Settling Parties and other Released Parties may file or refer to this order and the court's final judgment, the stipulation, the Preliminary Approval Order, and/or any Proof of Claim Form: (1) to effectuate the liability protections granted in any of those documents, including without limitation, to support a defense or counterclaim based on the principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar or

reduction, or any theory of claim preclusion or issue preclusion, or similar defense or counterclaim; (2) to obtain a judgment reduction under applicable law; (3) to enforce any applicable insurance policies and any agreements relating thereto; or (4) to enforce the terms of the stipulation and/or this order and the court's final judgment.

The court retains exclusive jurisdiction over the Settling Parties for all matters relating to the action, including the administration, interpretation, effectuation or enforcement of the stipulation, the settlement, and the court's order and final judgment, and including any application for fees and expenses incurred in connection with administering and distributing the settlement proceeds to the Settlement Class Members.

Without further order of the court, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions in the stipulation.

Any appeals concerning the attorneys' fees and expenses awarded herein, the compensatory award to lead Plaintiff, or the Plan of Allocation shall not affect, in any manner, the finality of this order and the court's final judgment.

In the event that the settlement does not become final and effective in accordance with the terms and conditions set forth in the stipulation, then the stipulation (except as otherwise provided in ¶¶ 2.14 and 8.3 therein, including any amendment(s)), the Preliminary Approval Order (as set forth in ¶ 26 thereof), and this order and the court's final judgment (except for the preceding paragraph, this paragraph, and the following paragraph) shall be rendered null and void of no further force or effect. In that event, all parties shall be deemed to have reverted <u>nunc pro tunc</u> to their respective status prior to the execution of the MOU, and all parties shall proceed in all respects as if the MOU and the stipulation had not been executed and the related orders had not been entered,

without prejudice in any way from the negotiation, fact, or terms of the settlement, and preserving all of their respective positions, claims, and defenses in the action. In such circumstances, all parties shall thereafter work together to arrive at a mutually agreeable schedule for resuming litigation of the action.

If the settlement and judgment do not become final, or the settlement is terminated in accordance with the terms and conditions set forth in the stipulation, within ten business days of entry of the order rendering the settlement and judgment non-final or notice of the settlement being terminated, all monies then held in the Notice & Administration Fund and the Settlement Fund, including interest earned thereon, shall be returned to the paying party per its instructions, except for any monies actually incurred and paid or payable for Notice & Administration Costs and Taxes. Under those circumstances, lead counsel shall undertake to return those amounts by taking all steps necessary to cause the escrow agent to make the foregoing repayments and, at the request of Defendants' counsel, to apply for and repay to the paying party the proceeds of any tax refund owed on the amounts held in those accounts. Plaintiff and the Settlement Class shall have no responsibility for the return of such consideration.

Any court orders entered during this action relating to the confidentiality of information shall survive this settlement.

III.

In sum, the court GRANTS the plaintiffs' motions for final approval of the class action settlement [D.E. 121] and for an award of attorneys' fees, reimbursement of expenses, and a compensatory award to lead plaintiff [D.E. 123]. The court will enter a final judgment consistent with this order.

SO ORDERED. This 19 day of November 2018.

                                              JAMES C. DEVER III
                                              United States District Judge