# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# SOUTHERN DIVISION
## No. 7:12-CV-00023-D

|  |  |
|---|---|
| PHILLIP J. SINGER, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>        Plaintiff,<br><br>v.<br><br>TRANS1 INC., KENNETH REALI, JOSEPH P. SLATTERY, RICHARD RANDALL, and MICHAEL LUETKEMEYER,<br><br>        Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## ORDER GRANTING AUTHORIZATION TO DISTRIBUTE THE NET SETTLEMENT FUND

Lead Plaintiff Phillip J. Singer ("Lead Plaintiff" or "Plaintiff"), through his Counsel, moved this Court for an order approving the Distribution Plan in the above-captioned class action (the "Action"). Having reviewed and considered all the materials and arguments submitted in support of the motion, including the Declaration of Jordan Broker Regarding Distribution Plan (the "Broker Declaration" or "Broker Decl."):

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1. This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement, dated May 18, 2018 (the "Stipulation") (Dkt. 115-1), the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Settlement Fairness Hearing (Dkt. No. 115-3), and the Broker Declaration, and all terms used herein shall have the same meanings as set forth in such documents.

2. This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Settlement Class Members.

3. The proposed plan for distributing the Net Settlement Fund (the "Distribution Plan") as set forth in the Broker Declaration to Authorized Claimants is **APPROVED**. Accordingly:

(a) The administrative recommendations of the Court-approved Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq" or "Claims Administrator") to accept the Timely Eligible Claims set forth in Exhibit B-1 to the Broker Declaration and the Late But Otherwise Eligible Claims set forth in Exhibit B-2 to the Broker Declaration, are adopted;

(b) The Claims Administrator's administrative recommendations to reject wholly ineligible claims as set forth in Exhibit B-3 to the Broker Declaration are adopted;

(c) Epiq is directed to distribute 100% of the available balance of the Net Settlement Fund—after deducting any Notice and Administration Costs, Taxes, and Tax Expenses—to Authorized Claimants who would receive at least $10.00 based on their Recognized Loss in comparison to the total Recognized Losses of all Authorized Claimants as set forth in paragraph 39 of the Broker Declaration (the "Distribution Plan") and the Court-approved Plan of Allocation;

(d) In order to encourage Authorized Claimants to promptly deposit their payments, all distribution checks will bear a notation "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF DISTRIBUTION.";

(e) Authorized Claimants who do not cash their Distribution checks within the time allotted or on the conditions set forth in paragraph 39 or footnote 3 of the Broker Declaration shall irrevocably forfeit all recovery from the Settlement, and the funds allocated to all such stale-dated checks shall be available to be re-distributed to other Authorized Claimants, if Lead Counsel, in consultation with Epiq, determines that it is cost-effective to conduct a second distribution. Similarly, Authorized Claimants who do not negotiate their second or subsequent distributions (should such distributions occur) within the time allotted or on the conditions set forth in paragraph 39 and footnote 3 of the Broker Declaration shall irrevocably forfeit any further recovery from the Net Settlement Fund;

(f) After Epiq has made reasonable and diligent efforts to have Authorized Claimants negotiate their Distribution checks (per paragraph 39 and footnote 3 of the Broker Declaration), but no earlier than six (6) months after the Distribution, Epiq shall, if Lead Counsel, in consultation with Epiq, determines that it is cost-effective to do so, conduct a second distribution of the Net Settlement Fund (the "Second Distribution"), in which any amounts remaining in the Net Settlement Fund after the Distribution, after deducting Epiq's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of such Second Distribution), and after the payment of any Taxes and Tax Expenses, shall be distributed to all Authorized Claimants in the Distribution who cashed their Distribution check and who would receive at least $10.00 from such re-distribution based on their *pro rata* share of the remaining funds. Additional re-distributions, after deduction of costs and expenses

as described above and subject to the same conditions, may occur until Lead Counsel, in consultation with Epiq, determines that further re-distribution is not cost effective;

(g) At such time as Lead Counsel, in consultation with Epiq, determines that further re-distribution of the funds remaining in the Net Settlement Fund is not cost-effective, and if any funds shall remain in the Net Settlement Fund after the payment of any unpaid fees or expenses incurred in connection with administering the Net Settlement Fund and after the payment of any Taxes and Tax Expenses, shall be contributed to a not-for-profit organization(s) as the Court may direct and approve;

(h) No new Claims shall be accepted after December 1, 2019, and no further adjustments to Claims received on or before December 1, 2019 that would result in an increased recognized claim amount shall be made for any reason after December 1, 2019, subject to the following exception. If Claim Forms are received or modified after December 1, 2019 that would have been eligible for payment or additional payment under the Plan of Allocation if timely received then, at the time that Lead Counsel, in consultation with Epiq determines that a re-distribution is not cost effective as provided in subparagraph (g) above, after the payment of any unpaid fees or expenses incurred in connection with administering the Net Settlement Fund and after the payment of any Taxes and Tax Expenses, such claimants, at the discretion of Lead Counsel, may be paid their distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks to the extent possible;

(i) All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of claims submitted in this Action, or who are otherwise

4

involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are hereby released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members, whether or not they receive payment from the Net Settlement Fund, are hereby barred from making any further claims against the Net Settlement Fund, Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released pursuant to the Settlement beyond the amounts allocated to Authorized Claimants;

(j) All of Epiq's fees and expenses incurred in connection with the administration of the Settlement and estimated to be incurred in connection with the Settlement are approved, and Lead Counsel is directed to pay the outstanding balance of $129,717.44 out of the Settlement Fund to Epiq; and

(k) Unless otherwise ordered by the Court, one year after the final distribution, Epiq will destroy the paper copies of the Claim Forms and all supporting documentation, and one year after all funds have been distributed, Epiq will destroy electronic copies of the same.

4. This Court retains jurisdiction to consider any further applications concerning the administration of the Settlement, and such other and further relief as this Court deems appropriate.

IT IS SO ORDERED. This 25 day of January 2020.

_____
James C. Dever III
United States District Judge

5